399 So.2d 114 (1981)
Cordelia WALLACE, Appellant,
v.
P.L. DODGE MEMORIAL Hospital, Appellee.
No. 79-1584.
District Court of Appeal of Florida, Third District.
June 2, 1981.
Podhurst, Orseck & Parks and Joel D. Eaton, Joe N. Unger, Miami, Wolfson & Diamond, Miami Beach, for appellant.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Henry Burnett, Miami, for appellee.
Before BARKDULL, SCHWARTZ and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is the second appearance of this case before this court. Three years ago, a panel of this court overturned a summary judgment entered in favor of P.L. Dodge Memorial Hospital. See Wallace v. P.L. *115 Dodge Memorial Hospital, 355 So.2d 855 (Fla.3d DCA 1978). In so doing, they held that "[t]here was a genuine issue of material fact as to the alleged negligence of the defendant hospital in failing to provide adequate attendants to protect the plaintiff as an invitee of the hospital against a violent attack by one of its mental patients," see Wallace v. P.L. Dodge Memorial Hospital, supra, at 855. After remand, the case went to trial. A jury resolved that issue of fact in favor of Mrs. Wallace. The trial court, notwithstanding the verdict, entered a judgment for the hospital. Mrs. Wallace appeals from that judgment.
The evidence from which this court determined that there existed an issue of fact precluding summary judgment is indisputably the same as the evidence later presented at trial. Therefore, our ruling in 1978 established the law of the case, precluding, except in extraordinary circumstances, a contrary determination that no issue of fact existed. Myers v. Atlantic Coast Line Railroad Company, 112 So.2d 263 (Fla. 1959); Geller v. 2500 Collins Corp., 130 So.2d 322 (Fla.3d DCA 1961); Lincoln National Life Insurance Company v. Roosth, 306 F.2d 110 (5th Cir.1962) (en banc). Since the trial court's judgment is a determination contrary to the established law of the case, and since we are of the view that this case paradigmatically requires us to apply the doctrine of law of the case, we reverse.
The situation in the present case is not unlike that addressed by the Fifth Circuit Court of Appeals, sitting en banc, in Lincoln National Life Insurance Company v. Roosth, supra. There a panel of the court reversed a judgment n.o.v. entered for the defendant-insurer. See Roosth v. Lincoln National Life Insurance Company, 269 F.2d 171 (5th Cir.1959). A retrial resulted in a verdict for the plaintiff-insured and the defendant appealed. The evidence in both trials was identical.
The panel to which the second appeal was assigned differed in its make-up from the panel which decided the first appeal. A serious question arose whether the second panel agreed with the decision of the former panel that the evidence was legally sufficient to present an issue to be decided by a jury. In light of that, the court on its own motion ordered an en banc hearing. The en banc court decided that it is precisely this kind of case which requires the application of the law of the case doctrine.
"The reconsideration of this identical record by the second panel and now by the full Court revealed another thing of equal positiveness. There are no differences among the Judges of this Court on the questions of law as such. The differences, such as they exist, relate to the facts. It is true, of course, that whether the evidence is sufficient to make out a jury case is a question of law. [citations omitted]. But it is one only in relation to the particular facts of the particular case. There is no disagreement over the controlling standard, only on whether the evidence does, or does not, satisfy that standard.
"It is that absence of any disagreement on controlling legal principles and the very substantial actual sameness of the two records which leads us to the conclusion that this is a case calling imperatively for the application of the doctrine of the law of the case."
* * * * * *
"[W]e think that when the issue resolves itself, as it does so clearly here, into a question of whether the same body of evidence is enough to permit a jury submission, neither a subsequent, second, or third, panel of this Court, nor the whole Court sitting en banc, should ordinarily undertake to review the correctness of the first decision or, doing so, arrive at a contrary conclusion... ." 306 F.2d at 112, 113.
The rationale of the Fifth Circuit applies with equal force to us:
"We think that in a multi-Judge Court it is most essential that it acquire an institutional stability, by which the immediate litigants of any given case, and equally important, the bar who must advise clients or litigants in situations yet to come, will know that in the absence of *116 most compelling circumstances, the decision on identical questions, once made, will not be re-examined and redecided merely because of a change in the composition of the Court or of the new panel hearing the case." 306 F.2d at 114.
We fully recognize that we have the power to reconsider our own rulings, notwithstanding that such rulings have become the law of the case. See Strazzula v. Hendrick, 177 So.2d 1 (Fla. 1965). But that power is to be exercised only in the most compelling circumstances, only for the most cogent reasons, and only where a manifest injustice would result from strict adherence to the rule. Strazzula v. Hendrick, supra. This is not a case in which that power should be exercised.[1]See also Goodman v. Olsen, 365 So.2d 393 (Fla.3d DCA 1979); Schempp v. Schempp, 339 So.2d 672 (Fla. 1st DCA 1976). Instead, this is simply a case where a former decision of this court is attacked as being erroneous  a case for which the doctrine of the law of the case was intended. Indeed, were we to carve an exception to the law of the case doctrine here, and question the soundness of the former decision, the doctrine would be subsumed by the exception.
The cases relied upon by Judge Barkdull in his dissent correctly point out that when the evidence before the appellate court at the time it reverses a trial court's entry of summary judgment differs from the evidence ultimately developed at trial, the appellate court's holding that there are triable issues of fact does not preclude the trial court from later entering a directed verdict.[2] Were we dealing here with even an arguable difference in the evidence, we would agree that the law of the case, which presupposes, in the present context, a ruling of law based on a specified set of facts, would not control. But the critical point in the present case is that the evidence concerning the number and training of the hospital's employees and staff, which was before this court when it held that it was for a jury to determine whether the number *117 and training of hospital employees and staff were adequate, was exactly the same as the evidence presented at trial. It is precisely when that body of evidence is, as here, the same that the reasoning of Lincoln National Life Insurance Company v. Roosth, supra (a case which, incidentally, is left undisturbed by later Fifth Circuit decisions found in the dissent), controls.
We therefore hold that the law of the case, predicated on evidence identical to that presented at trial, required that the issue of the hospital's negligence be decided by a jury, prevented the trial court from entering a judgment for the hospital, and prevents us from affirming that judgment.
We must, however, affirm the trial court's alternative order granting a new trial on the ground that the verdict was contrary to the manifest weight of the evidence. No abuse of discretion in this ruling has been demonstrated, and it may not, therefore, be set aside on appeal. Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Rivera v. White, 386 So.2d 1233 (Fla.3d DCA 1980); see Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Castlewood International Corp. v. LaFleur, 322 So.2d 520 (Fla. 1975). To the extent that Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978), and its progeny mandate that the trial court articulate the bases of its conclusion to grant a new trial on manifest weight grounds,[3] the order entered below fully satisfied that requirement. That order spells out the trial judge's reasons for his finding that there was no evidence at all of the defendant's liability.[4] Even though the law of the case compels us to disagree with that conclusion, it surely cannot be said that the court's opinion provides no record-based support for the determination that the manifest weight of the evidence was contrary to the jury's verdict.[5]See Robinson v. Allstate Ins. Co., 367 So.2d 708 (Fla.3d *118 DCA 1979); Urti v. Transport Commercial Corporation, 479 F.2d 766 (5th Cir.1973); Keystone Floor Products Co. v. Beattie Manufacturing Company, 432 F. Supp. 869 (E.D.Pa. 1977). Thus, as in, e.g., Wagner v. McCormick, 153 So.2d 860 (Fla.2d DCA 1963), we reverse the judgment for the hospital, but affirm the order requiring a new trial.
Reversed in part; affirmed in part.
BARKDULL, Judge, dissenting.
I respectfully dissent from the majority opinion that finds that the trial judge committed error in the entry of the N.O.V. because of the doctrine of the "law of the case".
Following our opinion in Wallace v. P.L. Dodge Memorial Hospital, 355 So.2d 855 (Fla.3d DCA 1978),[1] this matter reoccurred in the trial court. At the conclusion of the plaintiff's case, upon a motion for directed verdict being made, the trial court indicated he was inclined to grant it but would submit the cause to the jury, and if the jury found in favor of the plaintiff he would grant N.O.V.
Subsequently, the plaintiff received a favorable jury verdict. The jury determined that the defendant was 80% negligent and that the plaintiff was 20% negligent. The trial court also indicated that if he was in error in granting the N.O.V. he would grant a new trial, because the verdict was against the manifest weight of the evidence and the jury had been inadequately charged. An order granting the N.O.V. and/or new trial reads as follows:
... .
"ORDER GRANTING JUDGMENT N.O.V. AND, IN THE ALTERNATIVE, ORDER GRANTING NEW TRIAL
At the conclusion of the Plaintiff's case the Defendant P.L. DODGE MEMORIAL HOSPITAL filed a motion for a Directed Verdict on the grounds that there is no evidence upon which the jury could lawfully return a verdict for the Plaintiff. This Court announced at the time that it was clearly convinced that the Motion should be granted but under the appropriate rule would reserve ruling, allow the matter to proceed to the jury and reconsider the Motion if the jury's verdict was returned.
The jury has found for the Plaintiff by finding that the Defendant was 80% negligent and the Plaintiff 20% negligent. The amount of damages was Eighteen Thousand Dollars ($18,000). This Court concerns itself only with the question of whether or not there is any basis for finding that the Defendant was negligent, which was a legal cause of injury to the Plaintiff. It will not consider the amount of damages.
This Court is still unable to find a basis upon which a jury could lawfully find that the Plaintiff suffered injuries through any negligence of the Defendant. The Plaintiff had caused her husband to be placed in the hospital by the institution of a Baker Act proceedings. She was injured by her husband when she visited him in the hospital. This occurred when she sat down on the bed with him, at which time he grabbed hold of her, took her into the bathroom and committed battery upon her. This case was before the Third District Court of Appeals, which reversed a Summary Judgment, stating that there is an issue of fact on whether or not the hospital provided an adequate number of employees and staff. There was no evidence in the record that *119 the staff was inadequate. Even if it were inadequate, there is no evidence that the number or the training of the staff contributed or was a legal cause of the Plaintiff's injuries in any way. The hospital staff had received no warnings or instructions to prevent the Plaintiff from visiting her husband. Her injuries were not the result of any lack of supervision by the hospital. This is not a case where the inmate had escaped and caused injury to third persons, as is set forth in the case in 70 ALR 2nd, 366. I am unable to understand how the hospital breached any duty to the Plaintiff. In short, although I have reviewed the case and listened attentively to counsel for the Plaintiff, this Court is unable to find any legal basis for assessing liability against the Defendant hospital for injuries suffered by the Plaintiff resulting from battery performed on her by her husband.
In the event that an Appellate Court should disagree with this Court on the foregoing, then this Court still finds that the Defendant would be entitled to a new trial for the reason that the verdict was clearly against the manifest weight of the evidence. In addition thereto, this Court does not feel that the jury was adequately instructed in this matter. The Court, therefore, grants the Motion for a New Trial as an alternative to the entry of the judgment should that judgment be reversed. It is, therefore,
ORDERED and ADJUDGED that notwithstanding the jury verdict, the Plaintiff, CORDELIA WALLACE, take nothing of and from Defendant P.L. DODGE MEMORIAL HOSPITAL, and judgment be, and the same is hereby, entered for the Defendant P.L. DODGE MEMORIAL HOSPITAL."
... .
I would affirm the order granting the N.O.V. because the plaintiff failed to establish that the security personnel and/or attendants at the hospital were inadequate under the circumstances. It would appear that the standard of care for a psychiatric hospital is what is normal and customary for any hospital in the community, coupled with the hospital's knowledge of the patient's condition. See: DeMartini v. Alexander Sanitarium, 192 Cal. App.2d 442, 13 Cal. Rptr. 564 (1961); 9 Am.Jur.2d, Proof of Facts, 223; 40 Am.Jur.2d, Hospital & Asylums, § 26. However, this duty of care is that extended to the patient and not to a third person, as in the case sub judice. Herein, the injured party is a visitor to the hospital and, as such, is an invitee. See: McNulty v. Hurley, 97 So.2d 185 (Fla. 1957); North Broward Hospital District v. Adams, 143 So.2d 355 (Fla.2d DCA 1962); Sparks v. Ober, 192 So.2d 81 (Fla.3d DCA 1966); St. Vincent's Hospital, Incorporated v. Crouch, 292 So.2d 405 (Fla. 1st DCA 1974); 40 Am.Jur.2d, Hospital's & Asylums, § 35.
The majority opinion, in reversing, relies primarily on Federal cases which do not involve summary judgments.[2] My research discloses cases from the Fifth Circuit that clearly indicate that a ruling on a summary judgment does not prevent a trial judge from subsequently entering, as a matter of law on the facts adduced before him (a judge), a directed verdict or other order favorable to the party advocating the motion for summary judgment in the first instance. See: Gross v. Southern Railway Company, 446 F.2d 1057 (5th Cir.1971), wherein the following is found at page 1059:
... .
"In our former opinion where summary judgment in favor of the railroad defendant was reversed, we said that under the pleadings, affidavits, exhibits and depositions on file, there were issues of fact that should have been submitted to a jury, such as whether this was a `special circumstances' crossing, which was more than ordinarily dangerous and required special warnings; whether the train whistle was blown as required by statute; *120 and whether any of the acts of negligence charged to the railroad constituted a proximate cause of the accident. Plaintiffs contend that our opinion has disposed of most of the issues herein and is `a mandatory blueprint for all subsequent proceedings.' Defendant disputes this contention.
"An important threshold question, therefore, is whether our previous decision precluded the District Judge from giving due consideration to defendant railroad's motions for a directed verdict and later for judgment notwithstanding the verdict, on completion of a full trial on the merits. We have answered this question before on at least five occasions  that the Trial Judge is free to consider such motions. It is settled in this Circuit, therefore, that prior denial of summary judgment does not rule out the possibility of a subsequent directed verdict. The earliest applicable decision of this Circuit is Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, in which we said that `[T]he existence of a genuine controversy [in connection with a motion for summary judgment] does not foreclose a directed verdict if on the evidence as it is actually and finally adduced on a trial reasonable minds could not reach a contrary conclusion.' Id. at 496. We said that this holding `is a recognition that at times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all.' We concluded in Robbins that `Certainty, or predictable certainty, if not actually unobtainable, is often an illusion in the complex variables which pass through a courthouse door. The rules contemplate that a judge can take a first and a second and a third and a final look. It is the predictable uncertainty which sometimes makes this necessary.' Id. at 497, footnote omitted.
"In Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 529, Robbins was cited with approval and we said: `[T]he reversal of summary judgment does not foreclose the right and the imperative duty of the District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short.'

"Later, in Stanley v. Guy Scroggins Construction Company, 5 Cir., 1961, 297 F.2d 374, 378, where granting of summary judgment was reversed and the case remanded for trial, we said: `This holding does not rule out the possibility of a directed verdict. It may be, when the evidence is in, that the district judge will find that the case should be disposed of by a directed verdict. He is free to do so. Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, 496-497. On the other hand, this may prove to be a case where the underlying facts are susceptible of conflicting inferences, and the choice must be left to the jury.'
"In Gleason v. Title Guarantee Company, 5 Cir., 1963, 317 F.2d 56, 58, in response to a contention by appellant that since the evidence before the District Court on the hearing for summary judgment was substantially the same as the evidence on which the directed verdict was granted, the motion for a directed verdict should accordingly have been denied, we said, `Sound practical reasons * * * may justify a trial judge's denying a motion for summary judgment even on the identical evidence supporting his granting a directed verdict.' (Emphasis supplied.)
"To the same effect see Sheets v. Burman, 5 Cir., 1963, 322 F.2d 277, where the Court quoted with approval the prior holdings in Stanley and Robbins. See also 5 Moore, Federal Practice (2d ed. 1969) ¶ 50.03[4], p. 2338, in which Professor Moore states, `[T]he earlier denial of a motion for summary judgment should not, in any way, be considered a barrier to later consideration of a motion for directed verdict.' (Footnote omitted.)" [Emphases added.]
... .
*121 To the same effect, see: E.C. Ernst, Inc. v. General Motors Corp., 537 F.2d 105 (5th Cir.1976), wherein the following is found at page 108:
... .
"We noted at the outset of our opinion, however, that we were merely reviewing the record under `the usual standard' governing appeals from summary judgments. Id. [482 F.2d 1047] at 1049. That standard, of course, requires us to view the record in the light most favorable to the party who opposed the summary judgment motion; accepting his allegations as true and giving him the benefit of the doubt whenever his assertions conflict with those of the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Gauck v. Meleski, 5 Cir., 1965, 346 F.2d 433, 436; 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716 at 430-32 (1973). Under this standard, our analysis of the limited record before us necessarily was of a binding character only with respect to the existence of a genuine triable controversy. As in any reversal of summary judgment, our assessment of the facts was not a mandatory blueprint for all subsequent proceedings upon remand. Gross v. Southern Ry., 5 Cir.1971, 446 F.2d 1057, 1060. Indeed, we have held that our reversal of a summary judgment does not preclude the trial court from subsequently directing a verdict against the appellant:
[T]he reversal of summary judgment does not foreclose the right and the imperative duty of the District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short.

Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 529; accord, Gross v. Southern Ry., supra; Sheets v. Burman, 5 Cir., 1963, 322 F.2d 277, 281; Stanley v. Guy Scroggins Constr. Co., 5 Cir., 1961, 297 F.2d 374, 378; Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, 496-97."
In Florida it has been held that failure to grant a summary judgment doesn't establish the "law of the case". City of Coral Gables v. Baljet, 250 So.2d 653 (Fla.3d DCA 1971). It has also been held in Florida that the fact that a trial court should not have granted a defendant a summary judgment does not preclude it, in subsequent proceedings, from ruling in favor of the defendant. Boulevard National Bank of Miami v. Gulf American Land Corporation, 212 So.2d 17 (Fla.3d DCA 1968).
For the above reasons, I would affirm the trial court in the entry of the N.O.V. I concur in the affirmance of the order granting a new trial, but note that this ruling seems contrary to the reasoning for the reversal as to the N.O.V. On the one hand the majority seems to be saying the matter should be left to a jury determination yet, on the other hand, approves of the action of the trial judge's ruling as a matter of law that the verdict of a jury is against the manifest weight of the evidence.

ADDENDUM TO DISSENT
After my dissent was prepared and circulated, Judge Pearson amended his opinion by removing certain authorities originally cited, and now bases the opinion primarily upon the Fifth Circuit Court of Appeals opinion, reported as Lincoln National Life Insurance Company v. Roosth, 306 F.2d 110 (5th Cir.1962), and contends that the identical evidence was previously before this court at the time it reversed the summary judgment. This cannot be ascertained from our prior opinion. The cited case (Lincoln National Life Insurance Company v. Roosth, supra) involved two trials with the identical evidence. This is not the case sub judice. Unless the earlier opinion and decision demonstrates that the factual basis was identical, the doctrine of the law of the case should not be applied. See: Greenberg v. Greenberg, 397 So.2d 1032 (Fla.3d DCA 1981), wherein this court recently said:

*122 "... The law of the case applies where the same factual and legal issue is presented to the court a second time... ."
In reversing the summary judgment, the earlier opinion stated that "there was a genuine issue of material fact as to the alleged negligence of the defendant hospital in failing to provide adequate attendants...". The trial judge, in entering his order granting N.O.V., stated: "There was no evidence in the record that the staff was inadequate." (emphasis added) This clearly demonstrates that the evidence at the trial was not the same as that considered by this court in the earlier case, as this court found an issue of adequate attendants when reversing the summary judgment yet at the time of trial the trial judge found no evidence in this regard. The burden was on the plaintiff in the trial court to establish that the attendants were inadequate. The trial judge found that the plaintiff failed to establish this crucial part of her evidence. The doctrine of the law of the case cannot supply this deficiency of proof, even if applicable.
I adhere to my dissent as originally prepared and circulated.
NOTES
[1] The power to depart from prior rulings has been exercised circumspectly. Exceptions to the law of the case doctrine have been made only where the prior decision of the court (1) established unsound precedent for the guidance of others. e.g., State v. LoChiatto, 381 So.2d 245 (Fla. 4th DCA 1979) (where court's initial decision authorized assessment of attorneys' fees against State for appellate proceedings in a criminal case under statute pertaining to civil cases only); Standard Oil Co. of California v. Johnson, 56 Cal. App.2d 411, 132 P.2d 910 (1942); McGovern v. Kraus, 200 Wis. 64, 227 N.W. 300 (1929); (2) announced a doctrine in conflict with previous pronouncements of the court, e.g., Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917): (3) was made under a mistake of fact, e.g., Cochran v. M & M Transportation Co., 110 F.2d 519 (1st Cir.1940) (mistake of fact that judgments had been entered against the plaintiff, causing court to hold that plaintiff's failure to appeal precluded review); Putnam & Norman, Inc. v. Levee, 186 So. 368 (La. App. 1939) (mistake of fact that corporation in whose favor judgment had been entered was dissolved, causing court to set aside judgment); Bird v. Sellers, 122 Mo. 23, 26 S.W. 668 (1894) (mistake of fact that pertinent statute had been revised, causing decision based on supposed revision); (4) was impacted by an intervening decision, e.g., Johnson v. Cadillac Motor Car Co., 261 F. 878 (2d Cir.1919) (where court first held car manufacturer not liable to buyer with whom there was no privity of contract, but, in light of the intervening landmark decision in Macpherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), later held that an exception to the law of the case doctrine should be made where, inter alia, the initial decision "lays down a principle of law for future guidance which is unsound and contrary to the interests of society"; Maryland Casualty Company v. Hallatt, 326 F.2d 275 (5th Cir.), cert. denied, 377 U.S. 932, 84 S.Ct. 1335, 12 L.Ed.2d 296 (1964), and Connor v. New York Times Co., 310 F.2d 133 (5th Cir.1962) (where federal court had initially decided cases in reliance on state court decisions later overruled); (5) involved an important public policy consideration, e.g., Beverly Beach Properties, Inc. v. Nelson, 68 So.2d 604 (Fla. 1953) (where court's initial decision failed to give full faith and credit to judgment of sister state); see Annot., 87 A.L.R.2d 271 (1963); 3 Fla.Jur.2d Appellate Review §§ 414-29 (1978).
[2] The proposition that a trial court may for sound practical reasons deny summary judgment, afford the parties a full opportunity to present evidence at trial, and thereafter direct a verdict on the identical evidence, is inapposite to the present inquiry. Gleason v. Title Guarantee Co., 317 F.2d 56 (5th Cir.1963). The denial of summary judgment merely defers the matter until final hearing. City of Coral Gables v. Baljet, 250 So.2d 653 (Fla.3d DCA 1971).
[3] But see Hauser Motor Co., Inc. v. Byrd, 377 So.2d 773 (Fla.4th DCA 1979), and Robinson v. Allstate Ins. Co., 367 So.2d 708 (Fla.3d DCA 1979), holding that Wackenhut did not change the rule that the appellate court should examine the record to determine whether a new trial order granted on manifest weight grounds was an abuse of discretion, even if the particularized reasons are not specified in the order itself.

We assume without determining that Wackenhut applies to new trial orders other than those which, like Wackenhut itself, and most, if not all, of the subsequent decisions, deal with issues of the alleged excessiveness or inadequacy of damages.
[4] The order stated, in pertinent part:

"The jury has found for the Plaintiff by finding that the Defendant was 80% negligent and Plaintiff 20% negligent.
... .
"This Court is still unable to find a basis upon which a jury could lawfully find that the plaintiff suffered injuries through any negligence of the Defendant. The Plaintiff had caused her husband to be placed in the hospital by the institution of a Baker Act proceedings [sic]. She was injured by her husband when she visited him in the hospital. This occurred when she sat down on the bed with him, at which time he grabbed hold of her, took her into the bathroom and committed battery upon her. This case was before the Third District Court of Appeals, which reversed a Summary Judgment, stating that there is an issue of fact on whether or not the hospital provided an adequate number of employees and staff. There was no evidence in the record that the staff was inadequate. Even if it were inadequate, there is no evidence that the number or the training of the staff contributed or was a legal cause of the Plaintiff's injuries in any way. The hospital staff had received no warnings or instructions to prevent the Plaintiff from visiting her husband. Her injuries were not the result of any lack of supervision by the hospital. This is not a case where the inmate had escaped and caused injury to third persons, as is set forth in the case in 70 ALR 2nd, 366. I am unable to understand how the hospital breached any duty to the Plaintiff. In short, although I have reviewed the case and listened attentively to counsel for the Plaintiff, this court is unable to find any legal basis for assessing liability against the Defendant hospital for injuries suffered by the Plaintiff resulting from battery performed on her by her husband."
[5] The dissent notes an apparent inconsistency in our holdings that the evidence was sufficient to present a jury question and that the trial court was empowered to grant a new trial when, in its view, the verdict was against the manifest weight of the evidence. The distinction between the weight and sufficiency concepts, and the separate, but consistent, function of each, has recently received full discussion in a different context in Tibbs v. State, 397 So.2d 1120 (Fla. 1981).
[1] Which reads as follows:

"The plaintiff Cordelia Wallace appeals a final summary judgment in a negligence action in favor of the defendant P.L. Dodge Memorial Hospital and its insurer Appalachian Insurance Company and contends that the entry of such judgment was error because inter alia there was a genuine issue of material fact as to the alleged negligence of the defendant hospital in failing to provide adequate attendants to protect the plaintiff as an invitee of the hospital against a violent attack by one of its mental patients. We agree and reverse the judgment appealed from for further proceedings solely as to that issue. No other genuine issue of material fact exists in this case. Holl v. Talcott, 191 So.2d 40 (Fla. 1966); North Broward Hospital District v. Adams, 143 So.2d 355, 356 (Fla.2d DCA 1962)."
[2] Only Schempp v. Schempp, supra, involved a summary judgment and, on its facts, it is not analogous to the case sub judice.